**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000479**
**15-JUN-2020**
**07:48 AM**

NO. CAAP-18-0000479

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JASON ALEX KEONI MATTOS, JR., Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
SOUTH KOHALA DIVISION
(CASE NO. 3DTC-18-070229)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Jason Alex Keoni Mattos, Jr. **(Mattos)** was convicted by the District Court of the Third Circuit, South Kohala Division, State of Hawai'i,[1] of excessive speeding in violation of Hawaii Revised Statutes **(HRS)** § 291C-105.[2] The trial court entered a "Judgment and Notice of Entry of Judgment" **(Judgment)** on May 17, 2018. For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Bruce A. Larson presided.

[2] HRS § 291C-105 (2007) provides, in relevant part:

**Excessive speeding.** (a) No person shall drive a motor vehicle at a speed exceeding:

. . . .

(2) Eighty miles per hour or more irrespective of the applicable state or county speed limit.

## BACKGROUND

On January 25, 2018, Hawai'i County Police Department **(HCPD)** officer Kimo Keliipaakaua, using a Stalker DSR 2X radar device manufactured by Applied Concepts, Inc., determined that Mattos was operating his vehicle on a public road at a speed of 85 miles per hour **(MPH)**. Officer Keliipaakaua cited Mattos for excessive speeding. Mattos contested the citation. A bench trial was conducted on May 17, 2018. Officer Keliipaakaua was the only witness called. The trial court found Mattos guilty. This appeal followed.

## DISCUSSION

Mattos raises two points of error, contending that the trial court erred by: (1) allowing Officer Keliipaakaua to testify about the contents of radar training and device manuals over Mattos's hearsay[3] and best evidence[4] objections; and (2) allowing Officer Keliipaakaua to testify about the speed displayed on his Stalker DSR 2X radar device without proper foundation.

### I.    Evidentiary Objections

The State asked Officer Keliipaakaua to describe the contents of the manual that he received when he was trained to use the Stalker DSR 2X radar by Applied Concepts' instructors in December 2015. Mattos objected based on hearsay and the best evidence rule. The court overruled the objections, and Officer Keliipaakaua responded. Mattos acknowledged that

---

[3]    Rule 802, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016) **(HRE)** provides:

> Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute.

[4]    HRE Rule 1002 (2016) provides, in relevant part:

> To prove the content of a writing, . . . the original writing[] . . . is required, except as otherwise provided in these rules or by statute.

the State's entire direct examination of officer -- of the officer is -- is -- is for the purpose of *laying a foundation* so that the only piece of evidence that matters in this case can come in.

(Emphasis added.)   The Hawaii Rules of Evidence **(HRE)** do not apply to preliminary questions establishing the foundation for admissibility of a radar speed measurement.   State v. Rezentes, No. CAAP-15-0000294, 2016 WL 6330390, at *2 (Haw. App. Oct. 28, 2016) (SDO) (citing HRE Rule 104(a)[5] and HRE Rule 1101(d)(1)[6]). The trial court did not err in overruling Mattos's objections.

## II.   Foundation for Radar Speed Measurement

"The determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse."   State v. Gonzalez, 128 Hawaiʻi 314, 325, 288 P.3d 788, 799 (2012) (quoting State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d 1227, 1233 (2009)).

To lay a foundation for the introduction of a radar speed measurement, the State must demonstrate that: **(1)** the police officer who used the device was <u>trained</u> as required by the device manufacturer; and **(2)** the device's accuracy was <u>tested</u> according to manufacturer-recommended procedures and was operating properly prior to use.   See Gonzalez, 128 Hawaiʻi at 324-27, 288 P.3d at 798-801.

---

[5]     HRE Rule 104(a) (2016) provides, in relevant part:

Questions of admissibility generally.   Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) [concerning relevancy conditioned on fact]. In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

[6]     HRE Rule 1101(d)(1) (2016) provides:

(d)     Rules inapplicable.   The rules (other than with respect to privileges) do not apply in the following:

(1)     Preliminary questions of fact.   The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.

3

### A. Mattos waived any objection to training.

In his closing argument Mattos conceded that Officer Keliipaakaua was properly trained to operate his Stalker DSR 2X radar.[7] He waived any challenge to the training prong. See Gonzalez, 128 Hawai'i at 317, 288 P.3d at 791 (noting that failure to properly raise issue at trial level precludes party from raising that issue on appeal).

### B. The State laid a proper foundation for accuracy of the radar device.

Officer Keliipaakaua testified that on the day he ticketed Mattos, he tested and operated his assigned Stalker DSR 2X radar according to the contents of the manual that came with the device, the contents of the manual he received when he was trained by the manufacturer's representatives, and the actual training he received from the manufacturer. He described the device's two internal self-checks, and how he performed the accuracy test. He testified that the tuning forks come with the device and have their own serial numbers and calibration certificates. Officer Keliipaakaua testified that his Stalker DSR 2X radar tested properly before and after his shift on the day he ticketed Mattos. The State satisfied the foundational requirements for admitting the radar speed measurement into evidence under Gonzales, 128 Hawai'i at 324-27, 288 P.3d at 798-801.

---

[7] In State v. Gleed, No. CAAP-16-0000373, 2017 WL 2839547 (Haw. App. June 30, 2017) (SDO) the majority held that the State failed to lay a sufficient foundation to establish that Officer Keliipaakaua was qualified to operate the radar device at issue in that case. Id. at *1. In a concurring opinion, Chief Judge Nakamura noted: "[W]hile proof that Officer Keliipaakau[a] had successfully completed training provided or conducted by a representative of the manufacturer would, in my view, have been sufficient to satisfy the qualified operator prong, the State did not present such evidence." Id. at *2 n.1 (Nakamura, C.J., concurring). In this case, the State presented evidence that Officer Keliipaakaua attended and passed the training conducted by the manufacturer's representatives.

4

### C.    The "calibration" issue.

Mattos argues the State failed to establish that the radar used by Officer Keliipaakaua was properly "calibrated."[8] On voir dire, Officer Keliipaakaua testified that he does not "calibrate" his radar device. He explained:

> So calibration is something that's done by the manufacturer, or there are other companies out there that can actually calibrate your device.
>
> Um, the two different things that are calibrated that I use is the radar unit itself and the tuning forks are calibrated. Again, each comes with a calibration certificate of the date and what -- it has its own serial numbers. Again, even the tuning forks have their own serial numbers.
>
> Uh, this particular device that I use for -- to measure the Defendant's vehicle, um, I just received it. Uh, I -- I -- if I recall correctly, um, it was last calibrated on October [2017].[9]
>
> . . . .
>
> Okay, like it mentions in here, there's a recommendation. There's no expiration or a time frame where you have to send it back in for calibration. The only time that you have to send it back in for calibration is if the -- the device is not working properly.
>
> And as I mentioned, as it says in the passage I just read, is that whenever it reads "Fail" that it -- and you can't -- and you can't figure out what the problem is, then you have to send it back in to get re-calibrated.
>
> And so the accuracy check, um, is done by the officer and it's described in the manual on how to do that. Nowhere in the manual does it show the user, not only for me, but anybody that purchases this device or owns this device, does it show you where -- how to calibrate the device. It's only

---

[8]    The supreme court mentioned the "calibration" issue in State v. Amiral, 132 Hawaiʻi 170, 319 P.3d 1178 (2014) but that case was decided based on the State's failure to lay foundation for the officer's training, and the calibration issue was not reached. Id. at 179, 319 P.3d at 1187. Amiral and Assaye both involved the use of a Laser Technology Incorporated 20-20 Ultra-Lyte laser gun by the Honolulu Police Department, rather than the Applied Concepts, Inc. Stalker DSR 2X radar used by the HCPD; it is not at all clear from the cases whether a laser gun (which uses light waves) is "calibrated" in the same manner as a radar gun (which uses radio frequency waves).

We did not reach the calibration issue in State v. Portillo, No. CAAP-18-0000949, 2020 WL 1879621 (Haw. App. Apr. 15, 2020) (SDO) (involving the Kauaʻi Police Department's use of an unidentified radar gun) because it had been waived. Id. at *2.

[9]    Mattos was cited on January 25, 2018.

> done by the manufacturers or -- or companies that have the right equipment or that are authorized to calibrate the device itself.

(Footnote added.)

Mattos cites State v. Manewa, 115 Hawai'i 343, 167 P.3d 336 (2007), and State v. Wallace, 80 Hawai'i 382, 910 P.2d 695 (1996), in support of his argument that the State failed to show the radar gun itself was properly "calibrated."  As we explained in State v. Weber, ___ Hawai'i ___, ___ P.3d ___, No. CAAP-18-0000478 (Haw. App. June 8, 2020), Manewa and Wallace are both distinguishable on their facts.  In Manewa and Wallace there was no evidence that the State's witnesses confirmed the accuracy of their respective laboratory scales by, for example, weighing objects of a known, certified weight before or after weighing the drug evidence at issue in those cases.  However, in State v. Tailo, 70 Haw. 580, 779 P.2d 11 (1989), a case involving a radar gun, the supreme court stated:

> *A special tuning fork can be used to check the calibration of the radar gun.*  The tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork.  To test the accuracy of the radar gun with the fork, the officer strikes the fork to get it vibrating and then holds the fork in front of the radar head.  The radar unit will then read the fork's vibration and display the read Doppler frequency value for comparison by the officer with the imprinted value on the fork. . . .
>
> . . . .
>
> . . . [W]e hold that *once the State puts in evidence that the police conducted a tuning fork test indicating the [radar] gun was properly calibrated, this evidence creates a prima facie presumption that the tuning fork itself was accurately calibrated.*

Id. at 583, 779 P.2d at 13-14 (emphasis added).

"Calibrate" means "to measure against a standard[.]" Calibrate, Merriam-Webster, https://www.merriam-webster.com/dictionary/calibrate (last updated June 2, 2020).  In this case Officer Keliipaakaua testified that he measured his radar device's accuracy against a standard — two calibrated, certified tuning forks that came with the device.  Mattos produced no evidence to rebut the prima facie presumption that the tuning

forks were accurately calibrated. Officer Keliipaakaua's testimony established that he in fact verified that his Stalker DSR 2X was "calibrated" to accurately read the speed of Mattos's vehicle. The trial court recognized this when it stated:

> And so the question is, is whether or not it's accurate, not necessarily, uh, whether, uh, it's been calibrated. If the accuracy tests indicate that the -- the device was functioning properly and calibrated, and as he's testified he's using tun - tuning -- tuning forks to test the speed, um, of calibration, I mean that actually does test the speed calibration of the -- of the equipment to make sure that it's operating, uh, correctly.

## CONCLUSION

Based upon the foregoing, we hold that the trial court did not abuse its discretion by admitting Officer Keliipaakaua's radar measurement of the speed of Mattos's vehicle into evidence. Accordingly, the "Judgment and Notice of Entry of Judgment" filed on May 17, 2018, is affirmed.

DATED: Honolulu, Hawai'i, June 15, 2020.

On the briefs:

E. Britt Bailey,
for Plaintiff-Appellee.

Sarah M. Nishioka,
for Defendant-Appellant.

/S/ Lisa M. Ginoza
Chief Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge